IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GLENN MATTHEW TRACCHIA,

  Plaintiff,        No. CIV S-06-2916 GEB KJM P

 vs.

JAMES TILTON, et al.,

  Defendants.       FINDINGS & RECOMMENDATIONS

_____/

    Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983 challenging state regulations that bar inmates sentenced to life but who do not have parole dates from family visiting. Defendants have filed a motion for summary judgment.

I. Summary Judgment Standards Under Rule 56

    Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

/////

/////

/////

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On May 12, 2009, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

II. <u>Evidentiary Matters</u>

Defendants have objected to all of plaintiff's exhibits on relevance, hearsay and authentication grounds. In addition, defendants have objected to much of plaintiff's declaration as hearsay and as based on documents that are not attached. Finally, they have objected to a number of factual statements in plaintiff's memorandum of points and authorities.

In the <u>Rand</u> notice issued to plaintiff in May 2009, the court advised plaintiff that if he relies on written records in opposition to the motion for summary judgment, he "must prove that the records are what plaintiff claims they are." Docket No. 48 at 2. This reflects the Ninth Circuit's teaching that a court may consider only admissible evidence in ruling on a motion for summary judgment. <u>Orr v. Bank of America, NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002).

> Authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims. Fed. R. Evid. 901(a) . . . [U]nauthenticated documents cannot be considered in a motion for summary judgment.

<u>Id.</u>; <u>Hal Roach Studios v. Richard Feiner and Company, Inc</u>., 896 F.2d 1542, 1550 (9th Cir. 1989); <u>cf</u>. <u>Canada v. Blain's Helicopters, Inc.</u>, 831 F.2d 920, 925 (9th Cir.1987) (unauthenticated documents may not be relied upon to defeat a motion for summary judgment).

The Ninth Circuit has also held that hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. <u>Blair Foods, Inc. v. Ranchers Cotton Oil</u>, 610 F.2d 665, 667 (9th Cir. 1980).

Under Rule 56(e) of the Federal Rules of Civil Procedure, a party may rely on affidavits to support or oppose summary judgment, but these affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Hearsay is inadmissible on summary judgment to the same extent it would be at trial, as is testimony not based on the affiant's personal knowledge

/////

of the events detailed in the declaration. Kim v. United States, 121 F.3d 1269, 1276-77 (9th Cir. 1997).

The Ninth Circuit has further recognized that "to survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, so long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001); see also Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (content of affiant's diary would be admissible at trial even if diary itself would not be, so sufficient on summary judgment). The appellate court instructs the district courts to take a "more lenient" view of affidavits submitted by a party opposing summary judgment, but nevertheless recognizes the limits of any such lenient view. Compare Scharf v. United States Attorney General, 597 F.2d 1240, 1243 (9th Cir. 1979) (pro se party's affidavit based in part on his reading of medical literature sufficient to raise a disputed issue of fact) with Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028 (9th Cir. 2001) (conclusory affidavit, based on speculation, insufficient in opposition to summary judgment).

Finally, as one court has observed, relevance objections in summary judgment proceedings are themselves not relevant because a court must consider only material evidence in determining whether summary judgment is appropriate. Burch v. Regents Of The University of California, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006).

A. Plaintiff's Exhibits

Despite plaintiff's having been served the Rand notice, and his having filed an amended opposition after service of the notice, many of plaintiff's exhibits are unauthenticated. For example, he has submitted a number of documents that appear to be from another inmate's or inmates' central files, but has not explained how he obtained these materials or shown that they are what they purport to be. In addition, plaintiff submits an unauthenticated and redacted copy of a comprehensive risk assessment. See Am. Opp'n, Pl.'s Statement of Disputed Facts (PSDF)

(Docket No. 53-2) at 34-35[1], Exs. K-M, Q.  Because these exhibits are not authenticated, the court will not consider them.

In addition, some of plaintiff's exhibits simply are not material.  For example, the exact nature of plaintiff's role in the murder underlying his conviction is not material, so his Exhibits A, B and D will not be considered.

Plaintiff has submitted a number of laudatory chronos and certificates memorializing his completion of a number of classes and groups.  Am. Opp'n, Ex. F.  Plaintiff has indicated generally in his declaration that he has attached "extensive rehabilitation chronos" earned between 1999 and 2009.  Decl. Of G. Tracchia in Supp. Opp'n to MSJ (Tracchia Decl.), ¶ 8.  He could provide more detailed testimony as to his participation in groups and the documents themselves are authenticated by "appearance, contents, substance, internal patterns or other distinctive characteristics, taken in conjunction with circumstances."  Fed. R. Evid. 901(b)(4).  The chronos and certificates will be considered to the extent relevant.

Plaintiff has provided a number of documents concerning the parole process in California.  Exhibit G purports to be a table of time served by persons convicted of murder, compiled by another inmate, and includes a portion of some unidentified report from an unidentified website, purporting to analyze the impact of a "no parole" policy on the state.  Nothing in the table indicates the source of the information underlying the tabulation and nothing in the print-out gives the court any indication the material is authentic.  These documents will not be considered.

Exhibit N purports to be a portion of a 1997 update to a handbook on lifer hearings prepared for district attorneys; once again, this small excerpt is not authenticated and it will not be considered.

/////

---

[1] Page references are to the numbers assigned by the court's CM/ECF system, unless otherwise noted.

Exhibit O is a copy of Findings and Recommendations issued in <u>Coleman v. Board of Prison Terms</u>, Civ. No. S-96-0783 LKK PAN P (E.D. Cal. Dec. 22, 2004), which finds the existence of a gubernatorial policy against parole for those convicted of murder. This court cannot, and so will not, take notice of the truth of the facts recited in the court's opinion or of disputed facts outlined during the proceedings on remand. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 690 (9th Cir. 2001).

Exhibit P is a newspaper article from 1992 about a purported "no parole" policy; it is hearsay. Exhibit R appears to be material from the Governor's website, but it is both unauthenticated and immaterial. These exhibits will not be considered either.

### B. Plaintiff's Declaration

Defendants object to those portions of plaintiff's declaration that describe his custody level, privilege group and placement score as hearsay and based on documents that are not attached to the declaration. <u>See</u> Objections (Docket No. 57) at 1. Under Federal Rule of Civil Procedure 56, a "paper" must be attached to an affidavit only if it "is referred to in an affidavit. . . ." Plaintiff does not mention any documents in his description of his status and accomplishments. <u>See</u> Tracchia Decl. ¶¶ 1-7, 9-20.

Even assuming that plaintiff's account of his accomplishments may be deemed to be hearsay, evidence about his custody level, privilege group and placement score would be admissible at trial.

Finally, defendants' objection is puzzling in light of their reliance, in their statement of undisputed facts, on plaintiff's unsworn description in the complaint of his housing and security level in their statement of undisputed facts. Defendants' Statement of Undisputed Facts (DSUF) ¶ 6.

### C. Statements In The Points And Authorities

Defendants take issue with a number of plaintiff's factual assertions in his opposition to the motion for summary judgment. Specifically, they challenge plaintiff's

7

reference to the ruling of the three judge panel in Coleman, et al. v. Schwarzenegger, et al., Civ. No. S-90-0520/No. C01-1351, which directed prison officials to reduce the prison population. They also challenge plaintiff's references to riots at the California Institution for Men; his reference to parole policies; his discussion of other inmates' access to family visiting; and his quotation from various news articles. Am. Opp'n at 7–11; see also id. at 2-3. As the Ninth Circuit has observed, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Company, Inc., 690 F.2d 1235, 1238 (9th Cir. 1982).

D. Defendants' Exhibits

As alluded to above, the parties present different versions of plaintiff's role in the murder underlying his conviction, with defendants' relying on the probation report prepared in conjunction with his sentencing. Motion For Summary Judgment (MSJ), Declaration of S. Cooks (Cooks Decl.), Attach. 2. Cooks avers that CDCR institutions keep "inmate central file records" and that these records include the abstract of judgment and the Probation Officer's Report. Id. ¶ 2. This declaration is not a sufficient foundation to admit these materials as either records of regularly conducted activities or public records. See Fed. R. Evid. 803(6) & (8); see also Cal. Penal Code § 1203.05. Moreover, as noted above, plaintiff's exact role is immaterial to the issues in this case.

The court will, however, take judicial notice of the abstract of judgment, which both parties have proffered to the court, for it meets the criteria of Federal Rule of Evidence 201(b). United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (court may take judicial notice of proceedings in other courts with a direct relation to matters at issue). See Cooks Decl., Attach. 1; Am. Opp'n, Ex. C.

/////
/////
/////

III. Undisputed Facts

Plaintiff contends that every one of defendants' undisputed facts is in fact in dispute, precluding summary judgment. PSDF at 29, ¶ 1. Despite this claim, the facts essential to a resolution of this motion are not in dispute.

California allows inmates to participate in extended, overnight visits, known as "family visits" if they are assigned to a qualifying work/training incentive group and are a low enough custody level. 15 Cal. Code Regs. § 3177(b). The regulations define family visiting as a privilege and direct wardens to extend the privilege to inmates commensurate with security considerations. Id. There are several categories of inmates excluded from family visiting. The excluded category germane to this litigation is inmates serving life sentences who have not yet been given a parole date, even if they otherwise meet the criteria for family visiting. 15 Cal. Code Regs. § 3177(b)(2).

The "Final Statement Of Reasons" filed in conjunction with the adoption of the more restrictive family visiting policy observes that "inmates with no set parole date and those inmates whose case factors indicate that their participation in the family visiting program would be incompatible with public safety are considered escape and security risks to the extent that they are precluded from family visiting unless their status changes." MSJ, Declaration of Timothy Lockwood (Lockwood Decl.), Attach. 1 at 11 (Bates-stamped page number 290). The more restrictive family visiting policy not only for lifers but for other categories of inmates was based in part on statistics showing "227 incidents . . . within the family visiting units . . . related to narcotics, domestic violence, and sexual battery." Id. Another reason for the policy was a determination that "the privilege of family visiting should go to those inmates who can obtain the most rapid and tangible benefits, i.e., those inmates who . . . will be returning to their families within a known period of time. . . ." Id. at 12 (Bates-stamped page number 291). A supplement to the Final Statement of Reasons added that "[s]ecurity and custody are primary concerns in establishing the direction of correctional programs. . . . The direction of the family visiting

program is to grant family visits to inmates who have proven themselves to be eligible for this privilege. Inmates sentenced to life without a parole date are precluded from family visits because their sentence is indicative of having committed a heinous crime, thus proving to be incompatible with public safety." Id. at 13 (Bates-stamped page number 519); Am. Opp'n, Ex. E.

On October 27, 1997, plaintiff was sentenced to a term of sixteen years to life following his conviction for second degree murder and the finding that a principal in the commission of the crime had been armed with a firearm. Am. Opp'n, Ex. C; Cooks Decl., Attach. 1.

Although plaintiff was initially housed in Level III and IV high security facilities, he has reduced his custody level to 19 and is now held in a Level II institution. Tracchia Decl. ¶¶ 3-4,19–20. In addition, he has reduced his custody classification from Close-A to Medium-A and is housed in an open dormitory with other Medium-A inmates and is in the A1A privilege group. Id. ¶¶ 10-17.[2] He has not received any disciplinary rule violations for drugs or escape. Id. He does not yet have a parole date. Complaint (Compl.) at 9-10. His requests to participate in family visiting have been turned down. Id. at 33-34.

When plaintiff filed his complaint, he was housed at the Substance Abuse Treatment Facility (SATF); he is now an inmate at the California Correctional Institution (CCI). Compl. at 1; Am. Opp'n at 1. There are five regular family visiting units and one ADA unit at SATF; all units typically are full on weekends and during school vacation time. MSJ, Decl. of S. Ramirez (Ramirez Decl.) ¶¶ 2, 4.

---

[2] A Level II institution consists "primarily of open dormitories with a secure perimeter, which may include armed coverage." 15 Cal. Code Regs. § 3377 (b). A Medium-A inmate must be housed and given assignments and activities within the institution's secured perimeter and is subject to "frequent and direct" supervision. 15 Cal. Code Regs. § 3377.1 (6).

IV.  Analysis

Plaintiff raises an equal protection challenge to the family visiting regulation on its face and contends that its application to him is irrational.  Compl. at 4-9.  Defendants argue there are no disputed issues of material fact precluding summary judgment.

The essence of the Equal Protection Clause is that "the State must govern impartially."  Jones v. Helms, 452 U.S. 412, 423 (1981) (internal quotation omitted).  Accordingly, the clause "provides a basis for challenging legislative classifications that treat one group of persons as inferior or superior to others, and for contending that general rules are being applied in an arbitrary or discriminatory way."  Id. at 423-24.  The equal protection guarantee "is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  Nevertheless, the equal protection clause "does not forbid classifications" even though those classifications "in practice . . . result in some inequality."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (internal quotations omitted).

If a particular legislative classification is based on an inherently suspect classification or impinges on the exercise of a fundamental right, then the state must show that the classification is precisely tailored to serve a compelling governmental interest.  Plyler v. Doe, 457 U.S. 202, 216-17 (1982); Lee, 250 F.3d at 686.  Prisoners are not a suspect class.  See Rodriguez v. Cook, 169 F.3d 1176, 1179 (9th Cir. 1999).  Prisoners do not have a fundamental right to a particular kind of visit or to a visit with a particular person.  Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 461 (1989) ("the denial of prison access to a particular visitor is 'well within the terms of confinement ordinarily contemplated by a prison sentence'").

"[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity."  Heller v. Doe, 509 U.S. 312, 319 (1993).  Nevertheless, "[t]here must be a rational basis for distinctions by prison officials in the application of visitation policies to similarly situated inmates."  Africa v. Vaughan, 998 F.Supp.

552, 554 (E.D. Pa. 1998); see also Daniel v. Rolfs, 29 F.Supp.2d 1184, 1188 (E.D. Wash. 1998). However,

> equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.  In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines or infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

Federal Communications Commission v. Beach Communications, Inc., 508 U.S. 307, 313 (1993).  Moreover, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." Id. at 315.

In Bills v. Dahm, 32 F.3d 333 (8th Cir. 1994), the Court of Appeals considered a prison policy that permitted some incarcerated mothers to have overnight visits with their children while denying incarcerated fathers the same type of visitation.  The court found that "because [it] could make a case for the relationship between the official action" and the legitimate penological objective of security, there was no equal protection violation.  Id. at 336.

In Gerber v. Hickman, 291 F.3d 617, 619 (9th Cir. 2002) (en banc), the inmate plaintiff, serving a sentence of 100 years to life plus eleven years, sought an order compelling prison officials to allow him to inseminate his wife artificially.  The court rejected his claim that he had a constitutional right to procreate while incarcerated.  It also rejected his challenge to the district court's refusal of a request to amend his complaint to allege an equal protection violation based on the fact that the state permits some inmates to have conjugal visits but denies them to others.  The Court of Appeals upheld this ruling:

> Because it is completely rational for prison officials to decide that maintaining contact with those outside the prison is more important for inmates who will eventually be released from prison than for those ineligible for parole, the distinction Gerber challenges is rational and his equal protection claim is without merit.

Id. at 623.

In this case, officials relied both on public safety and on the importance of maintaining contact for those with release dates in enacting the regulations in question; both have been found to be legitimate and rational penological objectives that are rationally related to limitations on visitation.

Plaintiff argues vehemently that the rules are irrational because of the state's no-parole policy. This court expresses no opinion of the impact of any such policy on its analysis, for plaintiff has not presented admissible evidence on the question.

This court does not make policy nor can it pass on the ultimate wisdom of the rules that deny plaintiff family visits despite his extensive efforts at rehabilitation. Based on established law and the application of the rational basis test, however, plaintiff's equal protection challenge fails as a matter of law without the need for a trier of fact to resolve any factual disputes.

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (docket no. 33) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 21, 2009.

_____
U.S. MAGISTRATE JUDGE

2 trac2916.msj